UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cr-20157-ALTONAGA

UNITED STATES OF AMERICA

vs.

IOANNIS C. KRALIEVITS,

Defendant.
_____

## AGREED FACTUAL BASIS FOR GUILTY PLEA

Had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

*Overview of the Paycheck Protection Program*

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

2. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.

These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation to the lending institution showing their payroll expenses; typically, businesses would supply documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS").

3. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

4. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

## *The Agreement*

5. The Defendant, IOANNIS C. KRALIEVITS ("KRALIEVITS" or the "Defendant"), a resident of Miami, Florida, is the co-owner of Business A, a restaurant, and sole owner of Business B, a catering and food service business. Businesses A and B are located within Miami, Florida.

6. On or about May 19, 2020, Coconspirator A told the Defendant that he would apply for a PPP loan for the Defendant and Business B in exchange for a portion of the proceeds of the loan. The Defendant knew that Coconspirator A was not an employee of Business B and not

otherwise entitled to be paid a finder's fee from PPP proceeds. Despite this, the Defendant agreed that Coconspirator A would apply for a loan for Business B.

7. The Defendant provided his personal identifiers, such as his date of birth and social security number, to Coconspirator A, who entered the information on a PPP application for Financial Service Provider A. The Defendant also provided Coconspirator A with the account number for Business B's bank account at Financial Institution A so that Coconspirator A could direct Financial Service Provider A to deposit the PPP funds there.

8. Coconspirator B was the Defendant's business partner and co-owner of Business A, a restaurant in Miami, Florida. The Defendant and Coconspirator B shared signature authority on a bank account at Financial Institution A for Business A. Defendant had sole signature authority on a bank account at Financial Institution A for Business B.

9. The Defendant knew that Coconspirator A was helping Coconspirator B to apply for a loan for Business A.

10. Between May 19, 2020 and July 7, 2020, the Defendant and Coconspirator B discussed the fact that Coconspirator A had submitted a PPP loan for Business B and that Coconspirator A was helping Coconspirator B apply for a PPP loan for Business A.

### *False Statements on Loan Application*

11. On or about July 6, Coconspirator A used the Defendant's personal identifiers and the account number for Business B at Financial Institution A, to submit a PPP application to Financial Service Provider A. The loan application contained a number of false statements including: (a) "average monthly payroll" of $306,800; (b) 42 employees; and (c) a certification that "The funds will be used to retain workers and maintain payroll or make mortgage interest

payments, lease payments, and utility payments as specified under the Paycheck Protection Program Rule."

12. At no time has Business B had an average monthly payroll of as much as $306,800 or as many as 42 employees. The Defendant did not provide specific average monthly payroll or number of employees to Coconspirator A but understood that Coconspirator A would apply for an amount greater than the amount that Business B needed to retain workers, maintain payroll, or make mortgage interest, lease or utility payments.

13. Financial Service Provider A forwarded the Business B application to Lender A, which approved the loan in the amount of $767,000. The proceeds of the Business B loan were disbursed to Financial Institution A on or about July 7.

14. On or about July 8, Coconspirator B, with the assistance of Coconspirator A and the knowledge of the Defendant, submitted a PPP loan application to Financial Service Provider A for Business A. The loan application contained a number of false statements including: (a) "average monthly payroll" of $23,100; and (b) a certification that "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments as specified under the Paycheck Protection Program Rule."

15. At no time has Business A had an average monthly payroll of as much as $23,100. The Defendant and Coconspirator B knew the loan submitted for Business A was for an amount greater than the amount that Business A needed to retain workers, maintain payroll, or make mortgage interest, lease or utility payments.

16. Financial Service Provider A forwarded the application to Lender B, which approved the loan in the amount of $57,750. The proceeds of the Business A loan were disbursed

4

to Financial Institution A on or about July 9.

### *Proceeds Spent on Impermissible Expenses*

17. After the PPP funds were disbursed on or about July 7 and July 9, Defendant told Coconspirator C, an accountant, that he had obtained loan proceeds in excess of the amount supported by the actual payroll for Businesses A and B. To avoid detection by law enforcement and to qualify for loan forgiveness, Coconspirator C suggested that Defendant account for impermissible expenses (e.g., repayments of loans) by describing them as "payroll" for "employees." For example, Coconspirator C paid itself from these funds and listed itself as an "employee" of Business B although Coconspirator C was not in fact an employee and was not entitled to receive these PPP funds. At the Defendant's direction Coconspirator C prepared the books and records of both Businesses A and B after the PPP funds were disbursed to their respective accounts at Financial Institution A. The Defendant and Coconspirator C knew various "payroll" entries were false and were made with the purpose of concealing the true nature of the funds and their sources.

18. The Defendant's actions in furtherance of the offense charged, including but not limited to the acts described above, were done willfully, knowingly, with the specific intent to violate the law, and not because of accident, mistake, or other innocent reason. The Defendant's actions were within the Southern District of Florida and in other Districts. Finally, the foregoing is a summary of the principal facts that constitute the legal elements of the offense of conspiracy to commit wire fraud. This summary does not describe all of the evidence that the United States would present at trial or all of the relevant conduct that would be used to determine the Defendant's sentence under the Sentencing Guidelines. The Defendant acknowledges that the foregoing does

not describe all of the Defendant's conduct relating to the offense charged, nor does it identify all the persons with whom the Defendant may have engaged in illegal activities.

DATE: 1/3/2021

IOANNIS C. KRALIEVITS
Defendant

DATE: 1/5/2021

*Daniel Foodman*
DANIEL FOODMAN
Attorney for Defendant

DATE: 1/11/2021

EMILY SCRUGGS
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section

DATE: 1/11/2021

MICHAEL N. BERGER
Assistant United States Attorney
United States Attorney's Office

6